

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

May 19, 1947

Hon. Beauford H. Jester
Governor of Texas
Austin, Texas

Opinion No. V-204

Re: Power of the Automatic
Tax Board to set an ad
valorem tax rate for
the Available School
Fund except for text
books where sufficient
money is available in
Dear Governor Jester:          the clearance fund.

Your request for opinion dated May 2, 1947,
reads in part as follows:

"Several authorities have expressed
to me their grave doubt as to whether, un-
der the provisions of House Bill 301, re-
cently enacted by the Legislature, the Au-
tomatic Tax Board can set any ad valorem
tax rate for the Available School Fund, ex-
cept that portion needed for free textbooks.

"This question is raised in relation
to the following language of the bill:

"' . . . . there is hereby appropria-
ted, allocated, transferred and credited
to the Available School Fund such a sum
which when taken together with the total
of all other statutory and constitutional
amounts to accrue to the Available School
Fund will equal to such a total as may be
needed to pay a Fifty-five dollar ($55)
per capita . . . . "

"The suggestion made to me is that if
there should be sufficient money available
in the clearance fund to pay the $55, the
Automatic Tax Board could not levy the ad
valorem tax of 35 cents for schools . . . .

"I shall be grateful for your opinion on the matter."

The Constitution of Texas, Section 3, Article VII, provides in part as follows:

"One-fourth of the revenue derived from the State occupation taxes and poll tax of one dollar . . . shall be set apart annually for the benefit of the public free schools; and in addition thereto, there shall be levied and collected an annual ad valorem State tax of such an amount not to exceed thirty-five cents on the one hundred ($100.00) dollars valuation, as with the available school fund arising from all other sources, will be sufficient to maintain and support the public schools of this State for a period of not less than six months in each year, and it shall be the duty of the State Board of Education to set aside a sufficient amount out of the said tax to provide free text books for the use of children attending the public free schools of this State; provided, however, that should the limit of taxation herein named be insufficient the deficit may be met by appropriation from the general funds of the State." (Emphasis ours)

Reiterating the sources of funds for the support of the public free schools, the Constitution provides for the following:

1. One-fourth of the occupation taxes.

2. The poll tax.

3. Other sources available to the school fund. These "other sources" (Article 2823, R. C. S.) include interest on bonds and other funds;

interest on proceeds from the
sale of land; moneys from leases;
and all direct appropriations to
the Available School Fund, <u>except</u>
<u>such final appropriation (5 below)</u>
<u>as may be necessary to make up the</u>
<u>deficit in the total sum required</u>
<u>to maintain and support the public</u>
<u>schools</u>.

4. Ad valorem tax not to exceed 35
cents on the hundred dollar valua-
tion.

5. Appropriations from the general rev-
enue to make up the "deficit", if
the four above listed sources are
insufficient.

Under the Constitution, the general revenue
may be used for the support of the public free schools
in two ways. First, direct appropriations may be made
from the general revenue to the Available School Fund
and be included as one of the "other sources" (item 3
above) to be considered by the Automatic Tax Board in
fixing the ad valorem tax rate for school purposes.
This is in accord with the interpretation of Article
VII of the Texas Constitution made over a long period

Hon. Beauford H. Jester, Page 4, V-204

of years by the Legislature and the Courts. In defining what shall constitute the Available School Fund, Article 2823, V. C. S., the Legislature said that it should include "other Available School Funds provided by law." The history of educational legislation in Texas shows that the provisions of Article VII, the educational Article of the Constitution, have never been regarded as limitations by implication on the general power of the Legislature to appropriate money from the general fund and from other sources direct to the Available School Fund or to other school purposes. On many occasions the Texas Legislature has made direct appropriations from the general revenue to the Available School Fund, and on several occasions larger percentages than one fourth of the occupation taxes have been assigned to the School Fund. These Acts, and this legislative interpretation of the Constitution, have been approved by our courts. See, Mumme vs. Marrs, 120 Tex. Reports 383. When such direct appropriations are made to the Available School Fund before the ad valorem tax is set, it is clear that they are to be considered in arriving at the rate of ad valorem tax needed for school purposes.

The second manner in which appropriations may be made from the general revenue is outlined in

the last phrase of that portion of Section 3, Article VII, quoted above, for the purpose of making up the deficit, if any, after totaling the estimated revenue from all of other sources named above, including the ad valorem tax (items 1, 2, 3, and 4 above). When it is clear that such appropriations are made by the Legislature only for the purpose of raising the total available funds to the amount required to meet the necessary per capita apportionment, obviously they should not be considered by the Automatic Tax Board in fixing the ad valorem tax rate for school purposes. Such appropriations could not be credited to the Available School Fund until after the ad valorem tax rate has been set and the estimated deficit, if any, has been determined.

Therefore, it remains for us to determine what type of appropriation was contemplated and actually made by the 50th Legislature in House Bill 301. The bill provides, in part, as follows:

"'(4-a) After the above allocations and payments have been made from such Clearance Fund, beginning with the fiscal year September 1, 1947, and annually thereafter, there is hereby appropriated, allocated, transferred, and credited to the Available State School Fund <u>such a sum which when taken together with the total of all other statutory and constitutional amounts</u> to accrue to the Available School Fund <u>will equal</u>

to such a total as may be needed to pay
a Fifty-five Dollar ($55) per capita ap-
portionment for each and every scholastic
on the State-approved school census for
each year; and the Comptroller is hereby
authorized to determine the amount to be
transferred from the Clearance Fund to
the Available School Fund under the pro-
vision of this Act by taking into account
his estimate of such other constitutional
and statutory amounts to accrue to the
Available School Fund as made at the begin-
ning of each fiscal year. Thereafter the
Comptroller shall allocate, transfer, and
credit monthly in equal monthly installments
from the Clearance Fund to the Available
State School Fund such amount as so deter-
mined. The Comptroller is hereby author-
ized to modify from time to time during
the fiscal year his estimates of the rev-
enue to accrue to the State Available School
Fund in any one year, and shall in the
light of the revised estimate or estimates
increase, diminish, or suspend any remain-
ing monthly payment or payments from the
Clearance Fund to the Available School Fund,
provided by the close of each fiscal year
there shall have been paid from the Clear-
ance Fund to the Available School Fund
such an amount as may be needed to enable
the Available State School Fund to pay
said Fifty-five Dollar ($55) per capita
apportionment annually in full."

Clearly, we believe that the Legislature in-
tended by this Act to provide the second type of ap-
propriation above discussed. This bill contemplates
the transfer of no money to the Available School Fund
until after "the total of all other statutory and con-
stitutional amounts" have been considered, determined,
and credited to the School Fund. No part of such al-
location should be considered by the Tax Board in

setting the ad valorem tax rate for school purposes. The Board should set the rate of such an amount as with all other sources of school revenue, will meet the $55.00 per capita set by the Legislature, and without considering any portion of the funds that may be allocated thereafter under House Bill 301 to make up the balance, if any, necessary to pay such per capita apportionment.

That this was the intent of the Legislature in House Bill 301, is shown by the fact that the Comtroller is not authorized to transfer any of the money from the Clearance Fund until September 1, the beginning date of each fiscal year. Prior to that time, within five days after July 15th of each year, the Tax Board is required by Article 7043, V. C. S., to meet and calculate the ad valorem tax rate for school purposes for the next fiscal year. Only after that has been done and not before September 1st of the same year may the Comptroller transfer money from the Clearance Fund, if needed to pay the full $55.00 per capita apportionment.

Therefore, the Automatic Tax Board must meet in accordance with Article 7043, V. C. S., and levy an ad valorem tax of such an amount, not to exceed 35¢ on the $100.00 valuation, as with the available

school fund arising from all other sources (not including the allocation in H. B. 301) will be sufficient to pay the $55.00 per capita for maintenance and support of the public schools. Thereafter, if the total of the ad valorem tax and all of these other sources is insufficient to pay the $55.00 per capita, and only in such event, the Comptroller is authorized by H. B. 301 to transfer such sums as may be necessary to make up the full per capita of $55.00 set by the Legislature. In no event is the Comptroller authorized to determine the amount to be transferred or to make any portion of such transfer from the Clearance Fund until the beginning date (September 1st) of each fiscal year.

## SUMMARY

The allocations authorized in House Bill 301, 50th Legislature, from the Clearance Fund to the Available School Fund are limited to such amounts as may be necessary to pay the $55.00 per capita apportionment after the Automatic Tax Board has levied an ad valorem tax for school purposes not to exceed 35¢ on the $100.00 valuation. The Automatic Tax Board must levy the ad valorem tax without regard to any sums that may become available later from the Clearance Fund. The State Comptroller is not authorized to transfer any money from the Clearance Fund until September 1st of each fiscal year, such date being subsequent to calculation and levy of the ad valorem tax by the Automatic Tax Board.

Sincerely yours,

/s/ Price Daniel

Price Daniel
Attorney General

PD:sh:mrj

The foregoing opinion was considered
and approved in Conference composed of As-
sistant Attorney General Fagan Dickson,
Chester Ollison, Joe Greenhill, J. C. Davis,
Jr., and Ocie Speer.

/s/ Fagan Dickson

Fagan Dickson
First Assistant Attorney General
Chairman of the Conference

Approved: May 19, 1947

Attorney General of Texas

This Opinion considered and
approved in limited conference.